



**FILED & ENTERED**

**SEP 22 2016**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY bakchell  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

DIVINE MEDA AUBRY,

      Debtor.

Case No. 2:13-bk-25295-RK

Chapter 7

**MEMORANDUM DECISION AFTER TRIAL ON CONTESTED MATTER OF TRUSTEE'S MOTION FOR ORDER: (1) DISALLOWING DEBTOR'S AMENDED EXEMPTION IN STRUCTURED SETTLEMENT ANNUITY AND PROCEEDS THEREOF; OR (2) IN THE ALTERNATIVE, IF THE COURT DECIDES TO ALLOW SUCH AMENDED EXEMPTION, CONDITIONING ALLOWANCE OF AMENDED EXEMPTION ON PAYMENTS OF FEES OF TRUSTEE AND HIS GENERAL COUNSEL**

      Pending before the court is the Motion of the Chapter 7 Trustee Jason M. Rund ("Trustee") for Order: (1) Disallowing Debtor's Amended Exemption In Structured Settlement Annuity and Proceeds Thereof; or (2) In the Alternative, if the Court Decides to Allow Such Amended Exemption, Conditioning Allowance of Amended Exemption On

Payments of Fees of Trustee and His General Counsel ("Motion").  ECF (Electronic Case Filing or Docket Number) 45.  Debtor Divine M. Aubry ("Debtor") filed an opposition to the Motion, ECF 47, and Trustee filed a reply thereto, ECF 48.  Trustee then filed evidentiary objections to Debtor's declaration, which was attached to Debtor's opposition, ECF 49, and a supplemental reply to Debtor's opposition, ECF 50.

The Motion initially came on for hearing before the undersigned United States Bankruptcy Judge on June 30, 2015.  At this hearing, the court determined that because the Motion raised disputed factual and legal issues regarding Debtor's good or bad faith to warrant application of equitable estoppel, the Motion would be treated as a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure.  Thereupon, the court set a pre-trial conference for September 8, 2015, and at the pre-trial conference, the court set trial dates for November 12 and 13, 2015, which were then continued by stipulation and order to January 7 and 8, 2016.  ECF 55 and 57.  On November 17, 2015, the parties filed and lodged a joint pretrial stipulation, ECF 69 and 74, which the court approved by order entered on January 6, 2016, ECF 75.  The court then vacated the January 7, 2016 trial date, ECF 70, and conducted the trial of this contested matter on January 8, 2016.

At trial, Matthew F. Kennedy of the law firm of Robert A. Hessling, APC, appeared on behalf of Trustee, and Michael F. Chekian, Attorney at Law, appeared on behalf of Debtor.  Following trial, the court directed the parties to lodge proposed findings of fact and conclusions of law.  On February 17, 2016, Trustee lodged his proposed findings of fact and conclusions of law, ECF 77, and on March 18, 2016, Debtor lodged her proposed findings of fact and conclusions of law, ECF 78.  On March 31, 2016, Trustee filed objections to Debtor's proposed findings of fact and conclusions of law.  ECF 79.  Thereafter, the court took the matter under submission.

Having considered the moving and opposing papers, the exhibits and declarations attached therein, the undisputed facts set forth in their joint pretrial stipulation, ECF 69,

2

1  approved by order entered on January 6, 2016, ECF 75, the evidence admitted at trial,

2  the oral and written arguments of the parties, and the record before the court, the court

3  makes the following findings of fact and conclusions of law pursuant to Rules 7052 and

4  9014 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of

5  Civil Procedure.  The court adopts as its findings of fact the Admitted Facts Nos. 1-55 at

6  pages 1 through 8 of the Pretrial Stipulation, ECF 69, filed on November 17, 2015, as

7  approved by order of this court on January 6, 2016, ECF 75, which are otherwise

8  incorporated by reference herein to the extent not otherwise expressly referred to below.

9  Any finding of fact that should be properly characterized as a conclusion of law should be

10  considered as such, and any conclusion of law that should be properly characterized as a

11  finding of fact should be considered as such.

12  ## I.  BACKGROUND

13  A.    Debtor's Background, Pre-Bankruptcy Dealings with Zwerdling, and

14          Debtor's Annuity

15          Debtor has a high school diploma and three and one-half years of college where

16  she studied business administration with an emphasis in accounting but did not receive a

17  degree.  *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 11:28 a.m.  Debtor

18  worked in accounting for many years, as an office manager for an insurance agency, and

19  later became a pharmaceutical sales representative.  *Id.*, January 8, 2016 at 11:29 a.m.

20  In about 2007, Debtor started a small business, Divine Blessings, a yoga-inspired

21  clothing line.  *Id.*

22          In or about late 2011 or early 2012, Debtor befriended creditor Helene Barbara

23  Zwerdling ("Zwerdling") at the Agape International Spiritual Center in Culver City,

24  California, where they both attended services.  *Pretrial Stipulation,* ECF 69, at 3, ¶ 9.

25  Debtor often conducted trade shows at the Agape International Spiritual Center where

26  she displayed and sold Divine Blessings's clothing products.  *Id.* at 3, ¶ 10.

27          During 2012, Zwerdling's relationship with Debtor grew to the point where they

28                                                3

talked on nearly a daily basis, and in or about September 2012, Debtor requested that Zwerdling loan Debtor the sum of $1,356 to pay for the fees associated with a trade show at the Long Beach Convention and Entertainment Center. *Pretrial Stipulation* at 3, ¶¶ 11 and 13.

Pursuant to an oral agreement, Zwerdling loaned Debtor the requested $1,356 for the Long Beach trade show, which Debtor repaid several weeks later. *Pretrial Stipulation* at 4, ¶ 14. Pursuant to a separate written loan agreement, Zwerdling loaned Debtor an additional $2,500. *Id.* at 4, ¶ 15. In connection with the written loan agreement, Debtor told Zwerdling that Debtor had an annuity (the "Annuity"), that the annual Annuity payment would become due and payable to Debtor in mid-December 2012, and that Debtor would repay the loan out of the Annuity proceeds in late December 2012, which Debtor subsequently did. *Id.* at 4, ¶¶ 16 and 18. The Annuity was payable in 31 annual payments of $8,381, beginning December 19, 2008 and continuing through and including December 19, 2038. *Id.* at 6, ¶ 39. Thus, Debtor was aware that she owned an interest in the Annuity at least as of December 2012 and before she met with and retained Lisa F. Collins-Williams as her bankruptcy attorney to file her bankruptcy petition in this case in June 2013 as discussed below.

In December 2012, Zwerdling loaned Debtor an additional $36,000 pursuant to a separate, written loan agreement, which required that Debtor make minimum payments of $8,000 per year with the payments to commence on January 10, 2013 and continue on the tenth day of each successive month. *Pretrial Stipulation* at 4, ¶ 19; *Trustee's Trial Exhibit D,* Loan Agreement between Debtor and Helene Barbara Zwerdling. The total minimum loan payment of $8,000 per year approximated the annual Annuity payment collected by Debtor each December. *Pretrial Stipulation* at 4, ¶ 20.

*///*

4

B.    Debtor's Dealings with Her Bankruptcy Counsel, Lisa F. Collins-Williams,
Initial Petition Documents and 341(a) Meeting of Creditors

Fearing that a creditor, Debtor's landlord, might levy one of her bank accounts, on June 3, 2013, Debtor went to the Law Offices of Lisa F. Collins-Williams to obtain legal assistance. *See Pretrial Stipulation* at 5, ¶¶ 29 and 30; *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 11. While there, Debtor completed a bankruptcy questionnaire, *Debtor's Trial Exhibit 2*, Bankruptcy Questionnaire, and met with Attorney Lisa F. Collins-Williams ("Collins-Williams") for about 30 minutes to discuss Debtor's financial situation and eligibility for relief under the Bankruptcy Code. *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 11:36-11:37 a.m.

On June 11, 2013, Debtor filed her petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. *Trustee's Trial Exhibit U*, Voluntary Chapter 7 Petition, ECF 1, filed on June 11, 2013. Jason M. Rund was duly appointed as the Chapter 7 Trustee of Debtor's bankruptcy estate. *See Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, ECF 4, filed on June 11, 2013. Debtor's bankruptcy schedules as part of her initial bankruptcy petition documents did not disclose any interest in the Annuity. *Trustee's Trial Exhibit V*, *Schedules and Statement of Financial Affairs*, ECF 8, filed on June 25, 2013. Specifically, Item 10 on Schedule B-Personal Property, requested the Debtor to disclose any annuities ("10. Annuities. Itemize and name each issuer."), but "None" was checked off on this item. *Id.,* ECF 8 at 5.

According to Debtor, when she met with Collins-Williams in preparing to file for bankruptcy, she filled out a bankruptcy questionnaire from Collins-Williams, which had no written inquiries about annuities or worker's compensation awards, Collins-Williams did not review each line of the questionnaire, Collins-Williams did not ask her "if she had any retirement," and Collins-Williams did not ask her any questions about her assets, except her clothing line. *Debtor's Proposed Findings of Fact and Conclusions of Law,* ECF 78,

5

filed on March 18, 2016, at 2, *citing, Trial Testimony of Divine Meda Aubry,* January 8,

2016, at 11:37-11:40 a.m. and *Trial Testimony of Lisa F. Collins-Williams,* January 8,

2016, at 1:02-1:03 p.m. and 1:30 p.m.  In other words, Debtor's excuse for not listing the

Annuity as either an asset or an income item on her petition and original bankruptcy

schedules is that she did not tell her lawyer about the Annuity because her lawyer did not

ask.  The court does not find that Debtor 's excuse to be satisfactory because the

bankruptcy questionnaire, *Debtor's Trial Exhibit 2*, Bankruptcy Questionnaire, asks for

disclosure by Debtor of assets and income items, which the Annuity was both, that is, an

asset and an income item, and Debtor and her counsel met for 30 minutes to go over the

bankruptcy questionnaire which clearly elicited information from Debtor about her assets

and income items.  Debtor's explanation that the bankruptcy questionnaire did not

specifically ask about annuities or only asked for "monthly" items of income as opposed

to annual items of income like the Annuity is hyper-technical and does not excuse her

lack of disclosure to her bankruptcy attorney about the existence of the Annuity asset and

income.  Debtor knew that she was hiring a bankruptcy attorney, Collins-Williams, to help

her file a bankruptcy petition and start a bankruptcy case, that she was being asked

information about her assets and income to disclose in her bankruptcy case, that she had

an interest in the Annuity, a prepetition asset, and that she had received income from the

Annuity, a prepetition income item, and that she did not disclose this information to her

attorney, Collins-Williams, so that the information would not be on her bankruptcy petition

and schedules as originally filed.

At Debtor's meeting of creditors under 11 U.S.C. § 341(a) on July 30, 2013,

Trustee examined Debtor under oath, and Debtor testified, among other things, as

follows:

> TRUSTEE RUND: Did you read and sign your bankruptcy petition,
> schedules, and statements?
>
> MS. AUBRY: Yes.

6

1    TRUSTEE RUND: Are you personally familiar with everything contained in your bankruptcy petition, schedules, and statements?

2    MS. AUBRY: Yes.

3    TRUSTEE RUND: To the best of your knowledge, is all that information true, correct, and complete?

4

5    MS. AUBRY: Yes.

6    TRUSTEE RUND: Any errors or omissions that you need to bring to my attention or the court's attention?

7    MS. AUBRY: No.

8    TRUSTEE RUND: All of your assets are identified in your bankruptcy schedules?

9

10    MS. AUBRY: Yes.

11    *Pretrial Stipulation* at 2-3, ¶ 6, *quoting, Transcript of Section 341(a) Meeting of Creditors*

12    at [page:line(s)] 5:13–6:7, *Trustee's Trial Exhibit F,* Transcript of Section 341(a) Meeting

13    of Creditors at 5:13-6:7.  Debtor knew that she was testifying under penalty of perjury at

14    the meeting of creditors.  *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at

15    11:36-11:37 a.m.

16    Trustee filed a report of no distribution on July 31, 2013, *Trustee's Trial Exhibit W,*

17    *Chapter 7 Trustee's Report of No Distribution*, ECF 10, Debtor received her discharge on

18    September 16, 2013, ECF 14, and Debtor's bankruptcy case was closed on September

19    20, 2013, *Trustee's Trial Exhibit X*, *Document re Close of Case*, ECF 16.  *Pretrial*

20    *Stipulation* at 3, ¶¶ 7-8.

21    C.    The Reopening of Debtor's Bankruptcy Case

22    On December 28, 2013, Debtor, by her bankruptcy attorney, Collins-Williams,

23    filed a motion to reopen Debtor's bankruptcy case for the purpose of amending her

24    Schedule F listing general unsecured creditors so that the debts owed to these creditors

25    would be discharged. *Debtor's Motion to Reopen Case*, ECF 17, filed on December 28,

26    2013.  Specifically, Debtor meant to amend her Schedule F to add Zwerdling as a

27    creditor because Debtor felt her friend Zwerdling was becoming "unbearable" and

28

7

"disruptive" in trying to help Debtor with her business and in wanting Debtor to repay the

loan, and thus, to make sure her debt to Zwerdling would also be discharged in

bankruptcy. *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 11:58 a.m.-12:00

p.m.  Debtor's bankruptcy schedules as part of her initial bankruptcy petition documents

did not list Zwerdling as a creditor or her creditor's claim.  *Trustee's Trial Exhibit V*,

*Schedules and Statement of Financial Affairs*, ECF 8, filed on June 25, 2013.

According to Debtor, she did not list Zwerdling as a creditor on her original

bankruptcy schedules because she just obtained the loan from Zwerdling, she intended

to pay Zwerdling back, she did not file her bankruptcy case to "wipe out" (i.e., discharge)

her debt to Zwerdling and a staff member at the Law Office of Lisa F. Collins-Williams

told her that it was "allowable" not to list all creditors on her bankruptcy petition.  *Debtor's*

*Proposed Findings of Fact and Conclusions of Law,* ECF 78, filed on March 18, 2016, at

2, *citing, Trial Testimony of Divine Meda Aubry,* January 8, 2016, at 11:43 and 11:53-

11:54 a.m.  To some extent, the court finds Debtor's trial testimony on these points to be

credible that she did not list Zwerdling as a creditor because she intended to pay

Zwerdling back and originally did not want to discharge her debt to Zwerdling with her

bankruptcy case, which is corroborated by the list of creditors that Debtor prepared for

her consultation with the Law Office of Lisa F. Collins-Williams with Zwerdling's name

and address crossed out.  *Id.; Debtor's Trial Exhibit 3, Divine Aubry Creditors [List]* at 1.

Collins-Williams testified at trial that she never told Debtor that Debtor had the option of

listing all creditors rather than it being a requirement and that as a matter of practice, she

would never tell debtors that they had the option to list all creditors.  *Trial Testimony of*

*Lisa F. Collins-Williams*, January 8, 2016 at 1:07 p.m.  On this point, the court finds that

Collins-Williams is credible, and that if Debtor heard something to the contrary from

someone on Collins-Williams's staff as opposed to Collins-Williams, Debtor could not

have reasonably relied on staff's advice as opposed to the advice of the lawyer, Collins-

Williams, and Debtor failed to take reasonable steps to clarify any purported guidance

8

from staff.  Debtor should have listed Zwerdling as a creditor on her bankruptcy schedules, which appears to have been a strategic choice that Debtor made on her own without her lawyer's involvement.

On December 28, 2013, Zwerdling spoke with Debtor about the non-payment of the $36,000 loan and thereafter corresponded with Debtor on various occasions regarding the non-payment of the loan.  *Pretrial Stipulation* at 4, ¶ 22. Zwerdling's concern grew inasmuch as Debtor had informed Zwerdling that Debtor had received her annual Annuity payment in December 2013, yet Debtor had not used any of those proceeds to pay Zwerdling because Debtor was having financial difficulties at the end of 2013.  *Id.* at 4, ¶ 23;  *Trial Testimony of Helene Barbara Zwerdling*, January 8, 2016 at 10:46-10:57 a.m.; *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 12:03 p.m.

As a result of Debtor's default on Zwerdling's loan, Zwerdling filed a small claims complaint against Debtor in the Los Angeles County Superior Court, Southwest District— *Zwerdling v. Aubry*, Case No. ING 14S00939 ("Small Claims Action")—seeking to collect the amount of $6,240 that was due and owing under the loan through April 2014.  *Pretrial Stipulation* at 4-5, ¶ 24.  Thereafter, in or about mid-March 2014, Zwerdling received a letter from Collins-Williams from which Zwerdling first learned about Debtor's bankruptcy case.  *Id.* at 5, ¶ 25; *Trustee's Trial Exhibit J, Letter from Lisa F. Collins-Williams to Helene Barbara Zwerdling and Enclosures (Order Denying Debtor's Motion to Reopen Case and Discharge of Debtor)*.  Enclosed with Collins-Williams's letter were copies of a Discharge of Debtor order and an Order Denying Debtor's Motion to Reopen Case, which indicated that Debtor had filed a motion on December 28, 2013 to reopen the bankruptcy case to add a certain creditor to her bankruptcy schedules. *Pretrial Stipulation* at 5, ¶ 26. Zwerdling had not known of Debtor's bankruptcy case until she received Collins-Williams's letter.  *Trial Testimony of Helene Barbara Zwerdling*, January 8, 2016 at 11:06-11:07 a.m.

9

In or about late March 2014 and April 2014, Zwerdling corresponded by mail and email with Collins-Williams regarding Debtor's bankruptcy filing. *Pretrial Stipulation* at 5, ¶ 27. In Zwerdling's responsive email correspondence dated April 1, 2014, Zwerdling reminded Collins-Williams that, among other things, Collins-Williams had filed the motion to reopen the bankruptcy case on December 28, 2013 to add Zwerdling as a creditor and therefore knew about Zwerdling and the loan agreement with Debtor for about two months before Zwerdling filed the Small Claims Action. *Id.* at 5, ¶ 28; *Trustee's Trial Exhibit L*, *E-Mail Correspondence (1) between Helene Barbara Zwerdling and Debtor and E-Mail Correspondence (5) between Helene Barbara Zwerdlin and Lisa F. Collins-Williams*.

Zwerdling subsequently notified the United States Trustee about Debtor's unscheduled assets including the Annuity. *Pretrial Stipulation* at 5, ¶ 31; *Trial Testimony of Helene Barbara Zwerdling*, January 8, 2016 at 11:16 a.m. On April 14, 2014, as a result of the information provided by Zwerdling, the United States Trustee filed an *ex parte* motion to reopen the case to administer unscheduled assets consisting of the interest in Divine Blessings, the Divine Blessings Account and any other possible unscheduled assets. *Id.* at 5-6, ¶¶ 31-32; *Trustee's Trial Exhibit Y*, *U.S. Trustee's Ex Parte Motion to Reopen Bankruptcy Case under 11 U.S.C. § 350(b) for the Purpose of Appointing Chapter 7 Trustee to Administer Assets*, ECF 21. By an order entered on April 16, 2014, the ex parte motion was granted and the case was reopened. *Trustee's Trial Exhibit Z*, *Order on U.S. Trustee's Motion to Reopen Case*, ECF 22. Trustee was re-appointed as the Chapter 7 Trustee and withdrew his prior no distribution report. *Notice of Appointment of Trustee as Interim Trustee in a Reopened Case*, ECF 24, filed on April 23, 2014, and *Notice Withdrawing Trustee's Report of No Distribution*, ECF 25, filed on April 24, 2014.

///

1    D.    Debtor's First Amended Bankruptcy Schedules

2        On April 28, 2014, over ten months after Debtor filed her initial petition documents,

3 Debtor filed her first amended Schedules B, F, I and J ("First Amended Schedules") and

4 Statement of Financial Affairs. *Trustee's Trial Exhibit AA, Amended Schedules B, F, I*

5 *and J and Statement of Financial Affairs*, ECF 26.  On her First Amended Schedule B,

6 Personal Property, Debtor listed, among other personal property, the Divine Blessings

7 Account, four other bank accounts, clothing inventory with an aggregate scheduled value

8 of $5,700, and the Annuity with a value of $0.00, which she described as follows:

9        HARTFORD LIFE INDURANCE [sic] COMPANIES ANNUITY

10        Location: In debtor's possession YEARLY

11        PAYMENT $8,381

12 *Id.* at 4-6.  This was the first time in the bankruptcy case that Debtor disclosed any

13 interest in the Annuity as a prepetition asset or item of income.

14        On her First Amended Schedule F, Creditors Holding Unsecured Nonpriority

15 Claims, Debtor also added listings of several unsecured nonpriority claims of creditors

16 including Zwerdling's $36,000 claim.  *Trustee's Trial Exhibit AA, Amended Schedules B,*

17 *F, I and J and Statement of Financial Affairs*, ECF 26, filed on April 28, 2014, at 10.  On

18 her First Amended Schedule I, Your Income, and, in addition to her monthly pension or

19 retirement income of $1,150, Debtor listed her monthly Annuity income of $698 and her

20 monthly income of $900 from her business.  *Id.* at 15.  At this time, Debtor did not file an

21 amended Schedule C, Property Claimed as Exempt, and therefore did not claim an

22 exemption in the Annuity.  *Id.* at 1-27.

23    E.    Trustee's Post-Reopening Acts

24        Trustee's preliminary investigation revealed, among other things, that: (a) the

25 Annuity was payable in 31 annual payments of $8,381, beginning December 19, 2008

26 and continuing through and including December 19, 2038; and (b) Hartford Cebesco

27

28                                11

purchased the Annuity from the Hartford Life Insurance Company ("Hartford") in connection with a structured settlement with Debtor. *Pretrial Stipulation* at 6, ¶ 39.

Trustee retained the law firm of Robert A. Hessling, APC, as his general counsel in this bankruptcy case to assist him with, among other matters, collecting the Annuity payments and liquidating Trustee's right, title and interest in the Annuity. *Pretrial Stipulation* at 7, ¶ 40; *Trustee's Trial Exhibit BB, Application of Trustee to Employ Robert A. Hessling, APC, as General Counsel for Trustee*; and *Declarations of Jason M. Rund and Robert A. Hessling*. On July 9, 2014, Trustee filed a Notification of Asset Case and a Notice of Possible Dividend and Order Fixing Time to File Claims, which scheduled a claims bar date of October 14, 2014. *Trustee's Trial Exhibit CC, Notification of Asset Case and Notice of Possible Dividend and Order Fixing Time to File Claims*, ECF 29. By an order entered on August 1, 2014, the court authorized the employment of Robert A. Hessling, APC, as Trustee's general counsel, with an effective employment date of June 19, 2014. *Trustee's Trial Exhibit EE,* Order Authorizing Employment of Robert A. Hessling, APC, as General Counsel for Trustee, ECF 34.

Robert A. Hessling, APC, assisted Trustee with, among other matters, collecting the Annuity payments and seeking to liquidate Trustee's right, title and interest in the Annuity by, among other things:

      a.      communicating with Collins-Williams regarding the turnover of the Annuity payments to Trustee;

      b.      seeking to locate prospective purchasers;

      c.      communicating with representatives of JG Wentworth regarding the purchase and sale of Trustee's right, title and interest in the Annuity;

      d.      after negotiations, reaching a tentative agreement on Trustee's behalf with JG Wentworth regarding such purchase and sale;

      e.      reviewing drafts of sale documents from JG Wentworth, and preparing an addendum to such documents; and

1          f.       demanding on Trustee's behalf that Hartford turn over the future

2  annual Annuity payments.

3  *Trustee's Trial Exhibit BB, Application of Trustee to Employ Robert A. Hessling, APC, as*

4  *General Counsel for Trustee; and Declarations of Jason M. Rund and Robert A.*

5  *Hessling*, ECF 27, filed on July 7, 2014;  *Pretrial Stipulation* at 7, ¶ 43.

6       Further exchanges of documents and extensive negotiations between Robert A.

7  Hessling, APC, and another party, JG Wentworth, a prospective purchaser, ensued, but

8  JG Wentworth decided not to purchase the Annuity.  *Pretrial Stipulation* at 7, ¶ 44.

9  Moreover, Hartford initially failed to respond to Trustee's request for turnover of the

10  Annuity payments, but ultimately complied and remitted the December 2014 Annuity

11  payment of $8,381 to Trustee.  *Id.* at 8, ¶ 46.

12       On September 10, 2014, the United States Trustee filed an adversary proceeding

13  against Debtor, *United States Trustee for the Central District of California, Region 16, v.*

14  *Divine Meda Aubry*, Adv. No. 2:14-ap-01595-RK, seeking the revocation of Debtor's

15  discharge based upon, among other things, Debtor's alleged knowing and intentional

16  omissions her interests in assets, income and debts in her bankruptcy petition and

17  bankruptcy schedules (i.e., *Trustee's Trial Exhibits U and V,* Voluntary Chapter 7 Petition

18  and Schedules and Statement of Financial Affairs, ECF 1 and 8).

19       F.   Debtor's Second Amended Bankruptcy Schedules

20       On May 6, 2015, nearly two years after Debtor's first bankruptcy petition and

21  schedules were filed in this bankruptcy case and over one year since Debtor's

22  bankruptcy case was reopened and since Debtor filed her first amended bankruptcy

23  schedules, Debtor filed amended bankruptcy schedules for a second time, amending

24  Schedules A through J ("Second Amended Schedules") and Debtor's Statement of

25  Financial Affairs.  *Debtor's Trial Exhibit 4, [Second] Amended bankruptcy schedules filed*

26  *as document 44 on 05/06/15*, ECF 44.   On Debtor's Second Amended Schedule B,

27  Debtor lists the Annuity with the following, more detailed information:

28

> Worker's Compensation Award: payout as structured settlement annuity from The Hartford as part of settlement of worker's compensation case number WC 0539172 which were supposed to commence 12/19/2008, but did not commence until 2013. Annual payments of $8381 through and including 12/19/2038. The annuity has no cash surrender value. Listing estimated value of future payments as of 6/11/2013, which are reasonably needed for Debtor's health, maintenance and support.
> Location: In insurance company's possession

*Id.* at 21. On the Second Amended Schedule B, Debtor valued the Annuity at $217,906.

*Id.* With the Second Amended Schedules, for the first time, Debtor filed an amended

Schedule C-Property Claimed as Exempt ("First Amended Schedule C"), wherein she

claimed an exemption in the Annuity pursuant to California Code of Civil Procedure §

703.140(b)(10)(C). *Id.* at 25.

## II.  DISCUSSION

A.    <u>Burden of Proof on Validity of Debtor's Exemption Claim under California</u>

<u>Code of Civil Procedure § 703.140(b)(10)(C)</u>

On Debtor's First Amended Schedule C, Property Claimed as Exempt, as part of

her Second Amended Schedules, Debtor claimed the Annuity, which she listed as a

"Worker's Compensation Award", as exempt under California Code of Civil Procedure §

703.140(b)(10)(C). Pursuant to California Code of Civil Procedure § 703.140(b)(10)(C),

the debtor may elect to exempt the right to receive "[a] disability, illness, or

unemployment benefit."

"Workers' compensation benefits are generally treated as *disability* benefits and

thus exempt without regard to amount or whether the award is necessary for the support

of the debtor (or debtor's dependents)." 2 March, Ahart and Shapiro, *California Practice

Guide: Bankruptcy*, ¶ 7:626 at 7-81 (2015) (emphasis in original), *citing, In re Cain*, 91

B.R. 182, 183 (Bankr. N.D. Ga. 1988) (construing 11 U.S.C. § 522(d)(10)(C), which

verbatim mirrors the language of California Code of Civil Procedure § 703.140(b)(10)(C);

*In re LaBelle*, 18 B.R. 169, 170 (Bankr. D. Me. 1982) (same); *Matter of Evans*, 29 B.R.

336, 338 (Bankr. D.N.J. 1983) (same); *see also, In re Jones*, 446 B.R. 466, 473 (Bankr.

D. Kan. 2011) (construing 11 U.S.C. §§ 522(d)(10)(C) and (E), whose language verbatim

1   mirrors California Code of Civil Procedure §§ 703.140(b)(10)(C) and (E), and observing

2   that notwithstanding 11 U.S.C. § 522(d)(10)(E)'s "reasonably necessary" requirement,

3   workers' compensation benefits are exemptible under 11 U.S.C. § 522(d)(10)(C) because

4   they are inherently limited in amount and thus may be assumed to already be curtailed to

5   an amount reasonably necessary to support the debtor).  Nonetheless, regarding whether

6   Debtor can exempt the Annuity under California Code of Civil Procedure §

7   703.140(b)(10)(C), as claimed on Debtor's First Amended Schedule C, the court

8   considers whether Debtor or Trustee has the burden of proof on California Code of Civil

9   Procedure § 703.140(b)(10)(C).

10          Under 11 U.S.C. § 522(l), "[u]nless a party in interest objects, the property

11   claimed as exempt on such list is exempt."  Rule 4003(c) of the Federal Rules of

12   Bankruptcy Procedure provides with respect to exemption objections that "the objecting

13   party has the burden of proving that the exemptions are not properly claimed."  However,

14   state law set forth in California Civil Code § 703.580(b) provides for a different burden of

15   proof with respect to exemption objections: "At a hearing under this section, the

16   exemption claimant has the burden of proof."

17          In *In re Carter*, 182 F.3d 1027 (9th Cir. 1999), relying upon Rule 4003(c) of the

18   Federal Rules of Bankruptcy Procedure, the Ninth Circuit held that the objecting party

19   has the burden of production and persuasion:

20          A claimed exemption is presumptively valid . . . Initially, this means that the
            objecting party has the burden of production and the burden of persuasion.
21          The objecting party must produce evidence to rebut the presumptively valid
            exemption.   If the objecting party can produce evidence to rebut the
22          exemption, the burden of production then shifts to the debtor to come
            forward with unequivocal evidence to demonstrate that the exemption is
23          proper.   The burden of persuasion, however, always remains with the
            objecting party.
24

25   182 F.3d at 1029 n. 3, *citing inter alia,* Fed. R. Bankr. P. 4003(c) (also noting "there was

26   sustained discussion and some disagreement in the bankruptcy court and the BAP

27   concerning burdens of proof, production and persuasion"; other citations and quotations

28                                                15

omitted); *see also, In re Diaz,* 547 B.R. 329, 336 (9th Cir. BAP 2016) (discussing the burden of proof under Rule 4003(c) as stated in *In re Carter).*  Subsequently, the United States Supreme Court in *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15 (2000) held that because the burden of proof is a substantive element of state law, when state law is applied in federal cases, that state's burden of proof is applicable.  530 U.S. at 20-21 ("[d]o the State's right and the taxpayer's obligation include the burden of proof?  Our cases point to an affirmative answer.  Given its importance to the outcome of cases, we have long held the burden of proof to be a 'substantive' aspect of a claim.  That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." (citations omitted)); *see also, In re Diaz,* 547 B.R. at 336-337 (discussing the impact of *Raleigh v. Illinois Department of Revenue* on the use of burden of proof under state law for deciding an exemption objection).

Regarding whether a claimed exemption under state law invalidates the burden of proof allocation set forth in Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, to date, "there is no binding authority that explicitly changes the burden allocation set forth in *Carter* or FRBP 4003(c)."  *In re Gilman*, 544 B.R. 184, 196 (Bankr. C.D. Cal. 2016).  As noted in *In re Gilman,* in post-*Raleigh* cases, the Ninth Circuit itself has not addressed the issue and although the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") has recognized the conflict between the Supreme Court's holding in *Raleigh* and the Ninth Circuit's holding in *Carter*, "post-*Raleigh* BAP decisions on exemptions are unpublished, do not address the burden of proof issue or conclude[ ] that either burden allocation would result in the same disposition."  *Id*., *citing, In re Elliot*, 523 B.R. 188, 192 (9th Cir. BAP 2014) (applying the *Carter* burden allocation without addressing California Code of Civil Procedure § 703.580(b)); *In re Neff*, 2014 WL 448885, slip op. at *8 (9th Cir. BAP 2014) (unpublished decision) (same); *In re Karr*, 2006 WL 6810996, slip op. at * 5 n. 4 (9th Cir. BAP 2006) (unpublished decision); *In re Stanley,* 2006 WL 6811019, slip op. at *2 (9th

16

1  Cir. BAP 2006) (unpublished decision); *In re Davis,* 323 B.R. 732, 736 (9th Cir. BAP

2  2005) (same) and 323 B.R. at 742-744 (concurring opinion of Judge Klein, discussing

3  why California Code of Civil Procedure § 703.580(b) may be the correct burden); *In re*

4  *Kelley*, 300 B.R. 11, 16-17 (9th Cir. BAP 2003) (applying the *Carter* burden allocation

5  without addressing California Code of Civil Procedure §703.580(b)).  This year in *In re*

6  *Diaz,* in the absence of Ninth Circuit authority following *Raleigh v. Illinois Department of*

7  *Revenue*, the BAP decided that the reasoning of *Raleigh* supersedes the rule regarding

8  burden of proof stated in *In re Carter* when it held that "where a state law exemption

9  statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not

10  change that allocation."  Nonetheless, as explained below, in the absence of controlling

11  case law from the Ninth Circuit or the Supreme Court, because the court determines that

12  Debtor is entitled to exempt the Annuity under California Code of Civil Procedure §

13  703.140(b)(10)(C) under either burden of proof allocation, the court need not decide

14  whether Debtor or Trustee has the burden of proof.  *See, In re Arnold,* 471 B.R. 578, 588-

15  590 (Bankr. C.D. Cal. 2012) (setting forth this court's analysis why BAP decisions are not

16  generally controlling on the bankruptcy courts in this circuit); *see also, Zachary v.*

17  *California Bank & Trust,* 811 F.3d 1191, 1193 n. 1 (9th Cir. 2016) (the precedential effect

18  of BAP decisions remains an open question in this circuit).

19       Applying the burden set forth in California Code of Civil Procedure § 703.580(b),

20  placing the burden of proof on the party claiming the exemption, that is, if Debtor has the

21  burden to prove Debtor's right to receive a disability benefit as exempt under California

22  Code of Civil Procedure § 703.140(b)(10)(C), based on the evidence that Debtor offered

23  and the court received at trial, this court would determine that Debtor has made the

24  requisite *prima facie* evidentiary showing that Debtor is entitled to exempt the Annuity

25  under California Code of Civil Procedure § 703.140(b)(10)(C).  *See, In re Diaz,* 547 B.R.

26  at 337, *citing inter alia,* California Code of Civil Procedure § 703.580(b).

27

28

First, the undisputed facts set forth in paragraphs 16 and 39 of the Joint Pretrial Stipulation indicate that Debtor has an Annuity, which Hartford Cebesco purchased from the Hartford Life Insurance Company in connection with a structured settlement with Debtor.  Second, on Debtor's Second Amended Schedule B, Debtor disclosed the asset in question as a "worker's compensation award: payout as structured settlement annuity as part of worker's compensation case . . . ."  *Debtor's Trial Exhibit 4*, *Amended bankruptcy schedules filed as document 44 on 05/06/15*, ECF 44, at 21.  Third, at trial, in Debtor's case-in-chief, Debtor testified that she suffered a work-related injury that caused her to be out of work for ten years and that Debtor owned the Annuity when she first visited Collins-Williams' office for a pre-bankruptcy consultation on June 3, 2013.  *Trial Testimony of Divine Meda Aubry*, January 8, 2016 at 11:29 and 11:38 a.m.  No other documentary or oral evidence from Debtor was received at trial regarding the nature and character of the Annuity.  Based thereupon, the court finds that the Annuity stems from the work-related injury that caused Debtor to be out of work for ten years, and thus, the court determines that under California Code of Civil Procedure § 703.580(b), Debtor has met her burden of demonstrating that she is entitled to receive a disability, illness, or unemployment benefit for purposes of claiming an exemption under California Code of Civil Procedure § 703.140(b)(10)(C).  Accordingly, the burden of production then shifts to Trustee to produce rebuttal evidence that the Annuity should be characterized as something other than a disability benefit.  Because Trustee failed to offer any such rebuttal evidence, the court would determine that under the burden allocation set forth in California Code of Civil Procedure § 703.580(b), Debtor's claim of exemption in the Annuity under California Code of Civil Procedure § 703.140(b)(10)(C) should be allowed.

Nonetheless, applying the burden set forth in Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, that is, if Trustee has the burden of persuasion to disprove Debtor's right to claim the exemption for a disability benefit under California Code of Civil Procedure § 703.140(b)(10)(C), based on the evidence Trustee offered and the court

received, this court would determine that Trustee has failed to meet his burden of

persuasion that Debtor is not entitled to claim the Annuity as exempt under California

Code of Civil Procedure § 703.140(b)(10)(C) because Trustee did not offer any oral or

documentary evidence to prove that the Annuity should be characterized as something

other than a disability benefit.  Furthermore, through admitted facts in paragraphs 16 and

39 in the Joint Pretrial Stipulation, Trustee admits that Debtor has the Annuity, which

Hartford Cebesco purchased from the Hartford Life Insurance Company in connection

with a structured settlement with Debtor.  Accordingly, the court determines that Trustee

has not met his burden of persuasion under Rule 4003(c) that the Annuity is not exempt

under California Code of Civil Procedure § 703.140(b)(10)(C).

Therefore, under either burden of proof allocation, the court determines that

Debtor is entitled to claim the Annuity as exempt pursuant to California Code of Civil

Procedure § 703.140(b)(10)(C) in full.

B.    Equitable Estoppel

Notwithstanding the court's determination that Debtor is entitled to claim the

Annuity as exempt under California Code of Civil Procedure § 703.140(b)(10)(C), for the

reasons described below, the court determines that Debtor should be equitably estopped

from exempting the Annuity under California Code of Civil Procedure §

703.140(b)(10)(C). "[W]hen a debtor claims a *state-created* exemption, the exemption's

scope is determined by state law, which may provide that certain types of debtor

misconduct warrant denial of the exemption."  *Law v. Siegel*, __ U.S. __, 134 S.Ct. 1188,

1196-1197 (2014) (emphasis in original); *accord, In re Lua,* 529 B.R. 766, 774 (Bankr.

C.D. Cal.), *affirmed,* 551 B.R. 448, 452 (C.D. Cal. 2015), *appeal pending,* No. 15-56814

(9th Cir., notice of appeal filed on November 24, 2015).

Under California law, five elements must be present for the doctrine of equitable

estoppel to apply:

(a) a representation or concealment of material facts; (b) made with
knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and

19

permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it.

*Simmons v. Ghaderi*, 44 Cal. 4th 570, 584 (2008), *citing,* 13 Witkin, *Summary of California Law,* Equity, § 191 at 527-528 (2005); *accord, In re Lua,* 551 B.R. at 453.  The party asserting equitable estoppel has the burden of proof.  *Busching v. Superior Court*, 12 Cal.3d 44, 53 (1974) ("Unless the record affirmatively discloses the existence of a sufficient excuse or the basis for an estoppel.") (citations omitted).

By the Motion, Trustee argues that Debtor's claimed exemption under California Code of Civil Procedure § 703.140(b)(10)(C) in the Annuity should be disallowed based on the doctrine of equitable estoppel.

      1.    Representation or Concealment of Material Fact (first element)

The party against whom equitable estoppel is sought must have represented or concealed a material fact.  *Young v. Horizon West, Inc.*, 220 Cal.App.4th 1122, 1131-1132 (2013); *accord, In re Lua,* 551 B.R. at 453.

Here, Debtor's First Amended Schedules, filed in this case on April 28, 2014, constitutes a representation by Debtor that she was not claiming an exemption in the Annuity.  *See In re Lua,* 529 B.R. at 776.  Additionally, Debtor's silence on her claim of exemption for her Annuity from April 28, 2014, the date on which her First Amended Schedules were filed, to May 6, 2015, the date on which her Second Amended Schedules claiming the Annuity as exempt property for the first time were filed, constitutes a concealment for purposes of equitable estoppel.  Debtor concealed from Trustee and the court that she would file her Second Amended Schedules claiming the Annuity as exempt.  The court also finds that the representation and concealment were material because on Debtor's Second Amended Schedules, Debtor valued the Annuity at $217,906, by far Debtor's most valuable asset, which comprises the largest portion of her total assets valued on her Second Amended Schedules at $335,744.09.  Furthermore, the materiality of Debtor's representation of no claim of exemption and concealment of a

20

1   claim of exemption is underscored by the fact that on Debtor's First Amended Schedules,

2   Debtor valued the Annuity at $0, which is not the true value of this asset.

3         Moreover, further back in this case, Debtor's original Schedules, filed on June 25,

4   2013, constitute a representation by Debtor that she was not claiming an exemption in

5   the Annuity as she had not even listed the Annuity as an asset owned by her as of the

6   petition date.  *See In re Lua,* 529 B.R. at 776.  Additionally, Debtor's silence on listing the

7   Annuity as an asset or an item of income owned by her as of the petition date and on her

8   claim of exemption for her Annuity from June 25, 2013, the date on which her original

9   Schedules were filed, to May 6, 2015, the date on which her Second Amended

10   Schedules claiming the Annuity as exempt property for the first time were filed, also

11   constitutes a concealment for purposes of equitable estoppel.  Debtor concealed the

12   existence of the Annuity from her bankruptcy attorney, Trustee and creditors so that the

13   Annuity would not be disclosed on her bankruptcy schedules as either an asset or an

14   income item.  The court also finds that the representation and concealment were material

15   because on Debtor's Second Amended Schedules, Debtor valued the Annuity at

16   $217,906, by far Debtor's most valuable asset, which comprises the largest portion of her

17   total assets valued on her Second Amended Schedules at $335,744.09, which

18   information was not disclosed either on her original bankruptcy petition and schedules

19   and on her first amended bankruptcy schedules.

20         Accordingly, the court determines that Trustee has proven by the preponderance

21   of the evidence that the first element of equitable estoppel, Representation or

22   Concealment of Material Fact, is met.

23         2.    <u>Made with Knowledge of the Facts (second element)</u>

24         The party against whom estoppel is sought must also have had knowledge of the

25   facts.  *City of Long Beach v. Mansell*, 3 Cal.3d 462, 491 and n. 28 (1970); *accord, In re*

26   *Lua,* 551 B.R. at 453.  Furthermore, as stated by the California Supreme Court in *City of*

27   *Long Beach v. Mansell,*

28   21

[The requirement of actual knowledge of the true facts on the part of the party to be estopped] applies in its full force only in cases where the conduct creating the estoppel consists of silence or acquiescence. It does not apply where the party, although ignorant or mistaken as to the real facts, was in such a position that he *ought* to have known them, so that knowledge will be imputed to him. In such a case, ignorance or mistake will not prevent an estoppel.

3 Cal.3d at 491 and n. 28 (citation omitted).

Throughout Debtor's written opposition to the Motion and in her testimony at trial, she asserted that she did not review her initial bankruptcy schedules and her First Amended Schedules before they were filed with the court, nor did she sign any of the accompanying electronic filing declarations.  The court observes that the electronic filing declaration attached to the First Amended Schedules, which were filed on April 28, 2014, is a photocopy of the electronic filing declaration attached to Debtor's initial schedules, which were filed on June 11, 2013, and based on Debtor's trial testimony, Debtor did not sign either of the electronic filing declarations.  While this constitutes a violation of Local Bankruptcy Rule 1002-1(f), it does not negate the fact that Debtor ought to have known that she did not claim an exemption in the Annuity on her initial and first amended bankruptcy schedules and that Trustee had the opportunity and intent to collect and liquidate the Annuity as an asset of the bankruptcy estate.

At Debtor's 11 U.S.C. § 341(a) meeting of creditors on July 30, 2013, she testified under oath that she had read and signed her bankruptcy petition, schedules and statements, and was personally familiar with everything contained therein.  Yet at trial, Debtor testified that she incorrectly said such at the meeting of creditors because she was nervous and was not aware that she was concealing anything on those documents. *Trial Testimony of Divine M. Aubry*, January 8, 2016 at 11:55-11:57 a.m.  Irrespective of whether Debtor reviewed her original bankruptcy schedules and signed the accompanying electronic filing declaration, through her statements under oath at the 11 U.S.C. § 341(a) meeting of creditors on July 30, 2013, as of that date, Debtor was on

22

1   notice of her duties and rights under the Bankruptcy Code, including the duty to list the

2   Annuity as an asset on her bankruptcy schedules and to make her claim that it was

3   exempt property.  *See* 11 U.S.C. § 521(a)(1)(B) (stating that the debtor must file a

4   schedule of assets and liabilities "unless the court orders otherwise"); *see also,* 4 Resnick

5   and Sommer, *Collier on Bankruptcy,* ¶ 521.03[2] at 521-14 and n. 16 (16th ed. 2016)

6   ("The debtor has a duty to prepare schedules carefully, completely and accurately."),

7   *citing, Cusano v. Klein,* 264 F.3d 936 (9th Cir. 2001).

8        "A debtor cannot, merely by playing ostrich and burying his head deeply enough in

9   the sand, disclaim all responsibility for statements which he has made under oath."  *In re*

10  *Retz,* 606 F.3d 1189, 1199 (9th Cir. 2010) (citation omitted).  "Every debtor has a

11  continuing duty to assure the accuracy and completeness of schedules.  Postpetition

12  discovery of rights that actually existed at the time of filing must be addressed in the

13  schedules.  This implies a duty to amend."  *Searles v. Riley (In re Searles)*, 317 B.R. 368,

14  378 (9th Cir. BAP 2004), *affirmed*, 212 Fed. Appx. 589 (9th Cir. 2006); *see also,* 11

15  U.S.C. § 521(a)(1); Federal Rule of Bankruptcy Procedure 1007; *In re Rolland*, 317 B.R.

16  402, 413 (Bankr. C.D. Cal. 2004) ("Full and comprehensive disclosure is critical to the

17  integrity of the bankruptcy process."), *citing*; *Heidkamp v. Whitehead (In re Whitehead)*,

18  278 B.R. 589, 594 (Bankr. M.D. Fla. 2002) ("The veracity of the debtor's Statement is

19  absolutely essential to the successful administration of the Bankruptcy Code.").

20       Regarding Debtor's First Amended Schedules, at trial, Debtor testified that she did

21  not review them before they were filed, nor did she sign the accompanying electronic

22  filing declaration.  *Trial Testimony of Divine M. Aubry*, January 8, 2016 at 12:05-12:07

23  p.m.  Yet Debtor also admitted in her trial testimony that she had input in the First

24  Amended Schedules.  *Trial Testimony of Divine M. Aubry*, January 8, 2016 at 12:06-

25  12:07 p.m.  Again, irrespective of whether Debtor reviewed the First Amended Schedules

26  and signed the accompanying electronic filing declaration, through her statements under

27  oath at the 11 U.S.C. § 341(a) meeting of creditors on July 30, 2013, at least on this

28

record as of that date, Debtor was on notice of her duties and rights under the
Bankruptcy Code, including the duty to list the Annuity as an asset on her bankruptcy
schedules and to make her claim that it was exempt property.  Furthermore, beyond the
July 30, 2013 11 U.S.C. § 341(a) meeting of creditors, the court observes that Debtor had
other sufficient notice of Trustee's opportunity and intent to collect and liquidate the
Annuity as an asset of the bankruptcy estate, information which Debtor sat on until May
6, 2015 when Debtor filed her Second Amended Schedules and claimed an exemption in
the Annuity for the first time.  For example, Debtor's testimony that she had input in the
First Amended Schedules demonstrates that Debtor had notice that her bankruptcy
schedules were being amended before April 28, 2014 to list a previously undisclosed
asset, the Annuity, after her creditor, Zwerdling, informed the United States Trustee that
Debtor had failed to disclose this asset in Debtor's bankruptcy petition documents.
Debtor did not want Zwerdling to collect on the Annuity after Zwerdling asked for payment
on her loan based on Debtor's agreement to pay Zwerdling back from the annual
payments from the Annuity paid to Debtor each December, so instead of paying
Zwerdling as Debtor promised from her December 2013 Annuity payment, Debtor used
the money for other purposes and had her attorney, Collins-Williams, move to reopen
Debtor's bankruptcy case to amend her bankruptcy schedules to add Zwerdling, a
creditor previously known to Debtor, but not previously listed by Debtor on her schedules,
to make sure that any debt owed by Debtor to Zwerdling would be discharged.
Moreover, the court observes that Debtor had other sufficient notice of Trustee's
opportunity and intent to collect and liquidate the Annuity, including the following: on July
7, 2014, Debtor was served with a copy of Trustee's application to employ Robert A.
Hessling, APC, as Trustee's general counsel, which expressly states that Trustee sought
such services to, among other things, collect and liquidate the Annuity, ECF 27; on July
9, 2014, Debtor was also served with a copy of Trustee's Notification of Asset Case, ECF
30; and at trial, Debtor testified that she first learned of her First Amended Schedules

1    when Debtor's deposition was taken by the U.S. Trustee in December 2014.  *Trial*

2    *Testimony of Divine M. Aubry*, January 8, 2016 at 11:46 a.m.  Thus, at a minimum,

3    Debtor ought to have known of her opportunity to claim an exemption in the Annuity such

4    that knowledge should be imputed to her under *City of Long Beach v. Mansell*, 3 Cal.3d

5    462, 491 and n. 28 when the First Amended Schedules were filed in April 2014 on her

6    behalf by her attorney as she admittedly had input in these amended schedules and was

7    served with Trustee's papers to reopen the case and retain counsel to pursue the value

8    of the Annuity shortly thereafter by July 2014.  Accordingly, the court determines that

9    Trustee has proven by the preponderance of the evidence that the second element of

10    equitable estoppel, Made with Knowledge of the Facts, is met.

11           3.    To a Party Ignorant of the Truth

12           To invoke equitable estoppel against Debtor, Trustee must also demonstrate that

13    he was "ignorant, actually and permissibly, of the truth."  *Simmons v. Ghaderi*, 44 Cal.4th

14    at 584; *accord, In re Lua,* 551 B.R. at 454.  Here, the evidence indicates that Trustee had

15    no knowledge or indication that Debtor was going to file her Second Amended Schedules

16    and claim the Annuity as exempt.  From Trustee's conduct following the filing of Debtor's

17    First Amended Schedules, which includes communications with Debtor's counsel,

18    Collins-Williams, regarding turnover of the Annuity and collection of the first Annuity

19    payment in December of 2014, and Trustee's employment of Robert A. Hessling, APC,

20    for the purpose of collecting the Annuity payments and liquidating Trustee's right, title and

21    interest in the Annuity as a prepetition asset of the bankruptcy estate, the court infers that

22    Trustee was not aware that Debtor intended to claim an exemption in the Annuity.

23    Trustee, who has been on the panel of Chapter 7 Trustees since 2003 and has

24    administered over 15,000 Chapter 7 bankruptcy cases, *Trial Testimony of Jason M.*

25    *Rund*, January 8, 2016 at 9:26 a.m., would not have undertaken the above-described

26    actions and incurred thousands of dollars of professional fees and expenses to the

27    bankruptcy estate had Trustee known that Debtor would amend her Schedule C to claim

28                                        25

the Annuity as exempt property.  Specifically, Trustee's counsel has incurred $11,287 in

professional fees relating to the Annuity as of the date the Motion was filed, June 2, 2015.

*Trustee's Trial Exhibit HH;* Motion, Declaration of Robert A. Hessling at ¶ 6.  Accordingly,

the court determines that Trustee has proven by the preponderance of the evidence that

the third element of equitable estoppel, To a Party Ignorant of the Truth, is met.

>    4.    <u>With the Intention that the Ignorant Party Act on it</u>

Although equitable estoppel requires a finding of intent, *City of Long Beach v.*

*Mansell,* 3 Cal.3d at 490, Trustee need not prove that the debtor intended to deceive him

to create an equitable estoppel since:

> it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss . . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.

*Superior Dispatch, Inc. v. Insurance Corporation of New York*, 181 Cal.App.4th 175, 186

(2010), *citing, Lantzy v. Centex Homes*, 31 Cal.4th 363, 384 (2003); *accord, In re Lua,*

529 B.R. at 777.  "An estoppel may arise although there was no designed fraud on the

part of the person sought to be estopped."  *Lantzy v. Centex Homes*, 31 Cal.4th at 384;

*Vu v. Prudential Property & Casualty Insurance Company*, 26 Cal.4th 1142, 1152 (2001);

*see also, Crestline Mobile Homes Manufacturing Co. v. Pacific Finance Corp*., 54 Cal.2d

773, 778-779 (1960) ("Negligence that is careless and culpable conduct is, as a matter of

law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to

an estoppel.").  Silence may be used as evidence of fraudulent intent.  *In re Lua,* 529

B.R. at 777, *citing, R.D. Reeder Lathing Company, Inc. v. Allen*, 66 Cal.2d 373, 378

(1967).  Based on Debtor's silence about the Annuity in failing to list it as an asset on her

original bankruptcy schedules, then listing it on her First Amended Schedules, but not

claiming an exemption when she finally listed it as an asset on her First Amended

Schedules, and much later claiming it as exempt on her Second Amended Schedules,

the court finds that the element of intent is satisfied.  Although Debtor claims that she was

unaware of the contents of her First Amended Schedules when they were filed on April 28, 2014, even if that were true, as previously discussed, the court observes that Debtor had other sufficient notice of Trustee's opportunity and intent to collect and liquidate the Annuity, information which Debtor sat on until May 6, 2015 when Debtor filed her Second Amended Schedules whereby she claimed an exemption in the Annuity for the first time. Trustee relied on Debtor not claiming an exemption and Debtor remained silent despite having notice of Trustee's opportunity and intent to collect and liquidate the Annuity at least since the meeting of creditors in July 2013. Accordingly, the court determines that Trustee has proven by the preponderance of the evidence that the fourth element of equitable estoppel, With the Intention That the Ignorant Party Act on it, is met.

5.    That Party Was Induced to Act on it

The element of reliance requires that Trustee change his position in reliance on something said or done by Debtor, resulting in detriment or prejudice to Trustee. *State Compensation Insurance Fund v. Workers' Compensation Appeals Board,* 40 Cal.3d 5, 16 (1985); *accord, In re Lua,* 551 B.R. at 455. As previously discussed, Trustee was unaware that Debtor would amend her Schedule C and to his detriment, Trustee relied on Debtor's decision to wait a year to amend her Schedule C by incurring thousands of dollars of costs in administering the estate before Debtor filed her First Amended Schedule C. When Debtor filed her First Amended Schedule B on April 28, 2014, at which time Debtor did not attempt to claim an exemption in the Annuity, Trustee believed that meaningful value could be realized from the Annuity for unsecured creditors. *See Trial Testimony of Jason M. Rund*, January 8, 2016 at 9:42-9:43 a.m. and 10:15 a.m. Had Trustee known of Debtor's intent to claim an exemption in the Annuity, Trustee would not have, among other things, retained the law offices of Robert A. Hessling, APC, to assist him with collecting the Annuity payments and liquidating Trustee's right, title and interest in the Annuity. Accordingly, the court determines that Trustee has proven by the

27

preponderance of the evidence that the fifth element of equitable estoppel, That Party

Was Induced to Act on it, is met.

Based on the foregoing, the court determines that Trustee has proven by the

preponderance of the evidence that all five elements of equitable estoppel are met and

therefore, Debtor's amended exemption in the Annuity should be disallowed based on

application of California's doctrine of equitable estoppel.

C.    Prejudice

Additionally, Trustee argues that Debtor's claimed exemption in the Annuity should

be disallowed because allowance of the claimed exemption would prejudice Trustee and

creditors.  Nonetheless, as previously stated, "[W]hen a debtor claims a *state-created*

exemption, the exemption's scope is determined by state law, which may provide that

certain types of debtor misconduct warrant denial of the exemption."  *Law v. Siegal,* 134

S.Ct. at 1196-1197) (emphasis in original); *see also, In re Lua*, 529 B.R. at 774 ("Where,

as here, a debtor claims a state-created exemption, the scope of the exemption—and

any basis for denial of the exemption—must be found in state law.")  Trustee has not

cited any authority consistent with *Law v. Siegel, supra,* demonstrating that prejudice is a

proper basis for denial of an exemption under California law, nor is the court aware of any

such authority as it appears that based on the authorities cited by Trustee, this was a

judge-made reason for denial of a state law created exemption set forth in the federal

common law, which does not survive the holding of *Law v. Siegel*.  *See, In re Lua,* 529

B.R. at 772-774.

As cogently explained by the court in *In re Lua*:

> Bankruptcy Rule 1009 provides that a "schedule . . . may be amended by
> the debtor as a matter of course *at any time* before the case is closed.  Fed.
> R. Bankr. P. 1009(a)(emphasis added), and the Ninth Circuit has applied
> this right to the claim of exemptions.  *See Martinson v. Michael (In re
> Michael),* 163 F.3d 526, 529 (9th Cir. 1998); *see also Tyner v. Nicholson (In
> re Nicholson),* 435 B.R. 622, 630 (9th Cir. BAP 2010).

> Although exemptions and their amendment are liberally construed, a
> judicially created limit on this latitude and flexibility arose.  Bankruptcy
> courts throughout the country, including courts in the Ninth Circuit, denied

1    leave to amend or disallowed a claimed exemption if the trustee or other
party in interest timely objected and showed that either: (1) the debtor acted
2    in bad faith; or (2) creditors were prejudiced.  *See Michael,* 163 F.3d at 529
(adopting the test set forth in *Doan v. Hudgins (In re Doan),* 672 F.2d 831
3    (11th Cir. 1982)).  The Bankruptcy Code does not mention either "bad faith"
or "prejudice" as a basis for disallowing an original or amended exemption.
4    *See Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784 (9th Cir.
2000)(acknowledging that disallowing amended exemptions based on bad
5    faith or prejudice represents "judge-made exceptions").  Instead, courts
relied upon section 105(a) as the source of their equitable power to disallow
6    amended exemptions on those grounds.  *Nicholson,* 435 B.R. at 630.

7    This judicially created power was effectively abrogated by the recent United
States Supreme Court decision, *Law v. Siegel* . . . [The Supreme Court
8    held] that the general equitable powers of section 105(a) did not provide
authority for judge-made exceptions to explicit mandates of the Bankruptcy
9    Code.  Because section 522(k) explicitly prohibits the use of exempt
property to satisfy administrative expenses such as attorney fees, the
10   bankruptcy court was not authorized to invoke a judge-made equitable
exception to order otherwise.  *Law,* 134 S.Ct. at 1194 ("We have long held
11   that 'whatever equitable powers remain in the bankruptcy courts must and
can only be exercised within the confines of the Bankruptcy Code.").  The
12   Supreme Court emphasized that "federal law provides no authority for
bankruptcy courts to deny an exemption on a ground not specified in the
13   Code," and that any basis for denial of a state law exemption must arise
under state law.  *Id.* at 1197-98.

14   *In re Lua,* 529 B.R. at 772-773.

15        Accordingly, the court determines that Debtor's claimed exemption in the

16   Annuity should not be disallowed on the basis of prejudice to Trustee and creditors.

17        ///

18        ///

19        ///

20

21

22

23

24

25

26

27

28

29

1

### III. CONCLUSION

For the foregoing reasons, Trustee's Motion should be granted and Debtor's amended claim of exemption in the Annuity should be disallowed.  A separate order granting Trustee's Motion is being entered concurrently herewith.

IT IS SO ORDERED.

###

Date: September 22, 2016

_____

Robert Kwan
United States Bankruptcy Judge